1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10                              ----oo0oo----

11

12   ANGELA FLORES, individually and        No. 2:19-cv-00083 WBS JDP
     on behalf of other similarly
13   situated current and former
     employees,
14                                           ORDER RE: PLAINTIFF'S MOTION
                    Plaintiff,               FOR PRELIMINARY APPROVAL OF
15                                           CLASS ACTION SETTLEMENT
           v.
16
     DART CONTAINER CORPORATION, a
17   Nevada corporation; DART
     CONTAINER CORPORATION OF
18   CALIFORNIA, a Michigan
     corporation; and DOES 1-100,
19   inclusive,

20                  Defendants.

21

22                              ----oo0oo----

23          Plaintiff Angela Flores, individually and on behalf of

24   all other similarly situated employees, brought this putative

25   class action against defendants Dart Container Corporation and

26   Dart Container Corporation of California (collectively,

27   "defendants") alleging violations of the California Labor Code,

28   Cal. Lab. Code §§ 201-203, 226, 218, 233, 246, the California

                                    1

Business and Professions Code, Cal. Bus. Prof. Code § 17200, and the California Private Attorneys General Act of 2004 ("PAGA"), Cal. Lab. Code § 2698, et seq.  (See First Am. Compl. ("FAC") (Docket No. 23).)  Plaintiff has filed an unopposed motion for preliminary approval of a class action settlement. (Mot. for Prelim. Approval (Docket No. 36-2).)

I.   Factual and Procedural Background

        Plaintiff began working for defendants on approximately September 11, 2017, as an "inspector/packer." (FAC ¶ 8.)  As an inspector/packer, plaintiff's primary job duty was to ensure quality control and pack products on the production line.  (Id.) Many of defendants' employees, including plaintiff, are paid hourly and thus are not exempt from minimum wage or overtime pay laws and regulations.  (Id. ¶¶ 8-18.)

        On January 11 2019, plaintiff filed a putative class action in this court, claiming that defendants failed to provide her and other class members with wage statements that accurately identified the total hours worked during the pay period and failed to pay overtime wages in violation of (1) California Labor Code § 226, (2) California Business and Professions Code § 17200, and (3) the California PAGA.  (See Compl.)

        After the parties exchanged initial disclosures and engaged in some formal written discovery, plaintiff amended her complaint to add a claim for failure to compensate her and other class members for redeemed sick leave at their regular rate of pay in violation of California Labor Code § 246 and California Business and Professions Code § 17200.  (See FAC. ¶¶ 20-25; 62-75.)

As proposed, the Settlement Agreement establishes two distinct classes: the "Sick Pay Class" and the "Non-Exempt Wage Statement Class." (See Declaration of Jenny Baysinger, Ex. A ("Settlement Agreement") at ¶¶ 1.15, 1.20, 1.37, 32 (Docket No. 36-1).) The Sick Pay Class contains one subclass for former employees who separated from employment at any time between January 11, 2016, and November 30, 2020 (the "Former Employee Sub-Class"). (See id.) There are approximately 423 Non-Exempt Wage Statement Class Members, 502 Sick Pay Class Members, and 131 Former Employee Sub-Class Members. (See id. ¶ 12a.)

Defendants have agreed to pay up to $411,000 to create a common fund (the "Maximum Settlement Amount" or "MSA"), from which payments will be made for (1) attorney's fees in an amount up to $137,000 or 33% of the fund; (2) litigation costs incurred by class counsel, estimated at $7,500; (3) an incentive award for plaintiff of $2,500; (4) settlement administration costs estimated at $8,850, payable to Phoenix Class Action Administration Solutions; and (5) PAGA penalties in the amount of $15,000, $11,250 of which will be paid to the California Labor and Workforce Development Agency ("LWDA") and $3,750 of which will be paid to members of the Non-Exempt Wage Statement Class members. (See id. at ¶¶ 16, 19.)

The remaining funds ("Net Settlement Amount"), estimated at $243,900, will be distributed to class members who do not opt out of the settlement. (See id.) $25,000 will be allocated to the Sick Pay Class, $109,450 will be allocated to the Former Employee Sub-Class, and $109,450 will be allocated to the Non-Exempt Wage Statement Class. (Id. at ¶ 32.) Settlement

3

proceeds will be distributed on a pro-rata basis to Non-Exempt
Wage Statement Class and Sick Pay Class members based on total
workweeks worked within the respective class period. (Id.)
Settlement proceeds will be distributed equally among Former
Employee Sub-Class Members. (Id.) Each Non-Exempt Wage
Statement Class Member is expected to receive $258.74; each
Former Employee Sub-Class Member is expected to receive $835.49;
and each Sick Pay Class Member is expected to receive $49.80--an
amount that exceeds the actual wage loss believed to have been
suffered because of sick pay underpayments. (Baysinger Decl. ¶¶
45, 63.) The named plaintiff herself estimates that she was only
underpaid a total of $16.00 for redeemed sick leave, for
instance. (Id. ¶ 63 n.1.) If the number of employees in any of
these classes increases, the Settlement Agreement contains an
"escalator clause" that increases the amount of the MSA by an
amount equal to the percentage increase above 5% (e.g., if the
number of class members increases by 6%, the MSA increases by
1%). (See Settlement Agreement at ¶ 17.)

Plaintiff provided a copy of the proposed settlement
agreement to the LWDA on November 16, 2020, the day before filing
this Motion for Preliminary Approval. (Baysinger Decl. ¶ 77.)

The Notice of Class Action Settlement will be mailed to
all class members via first class mail. The Notice informs class
members of the terms of the Settlement Agreement, their right to
opt out and/or object, and an estimate of their share of the Net
Settlement Amount. (See Settlement Agreement ¶ 31.) The Notice
also informs class members of the fact that, separate and apart
from the class claims, plaintiff has agreed to settle individual

claims under the California Fair Employment and Housing Act ("FEHA") for sexual harassment, retaliation, and failure to prevent harassment and retaliation, as well as a claim under the California Labor Code for failure to pay wages upon termination, that she brought against defendants in a separate lawsuit in San Joaquin County Superior Court.  (See Settlement Agreement, Ex. 1, at 4 ("Proposed Notice") (Docket No. 36-1); Pl.'s Request for Judicial Notice, Ex. 2 ("Pl.'s FEHA Complaint") (Docket No. 36-4).)  Finally, the Notice informs class members of the existence of two other ongoing cases against defendants, Prado v. Dart Container Corp. of California., et al., Santa Clara County Case No. 18CV336217, and Alvarado v. Dart Container Corp., Riverside County Superior Court Case No. RIC1211707.  The Notice indicates that the Settlement Agreement expressly excludes members of the Alvarado class, that some of the claims in the Prado Class Action have the potential to overlap with claims in this matter, and that class members may opt out of the settlement if they wish to pursue any potentially overlapping claims as part of the Prado Class Action instead.  (See id. at 2-3; Settlement Agreement ¶ 1.20.)  Class members shall have 60 days from the date of the Notice's mailing to either opt out or to submit an objection to the proposed settlement.  (Id. at 6-7.)

II.  Discussion

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  "To vindicate the settlement of such serious claims, however, judges have the responsibility of ensuring fairness to

all members of the class presented for certification." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).  "Where [] the parties negotiate a settlement agreement before the class has been certified, settlement approval requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)."  Roes, 1-2 v. SFBSC Mgmt., LLC, 944 F.3d 1035, 1048 (9th Cir. 2019) (citation and internal quotations omitted).

The approval of a class action settlement takes place in two stages.  In the first stage, "the court preliminarily approves the settlement pending a fairness hearing, temporarily certifies a settlement class, and authorizes notice to the class."  Ontiveros v. Zamora, No. 2:08-567 WBS DAD, 2014 WL 3057506, at *2 (E.D. Cal. July 7, 2014).  In the second, the court will entertain class members' objections to (1) treating the litigation as a class action and/or (2) the terms of the settlement agreement at the fairness hearing.  Id.  The court will then reach a final determination as to whether the parties should be allowed to settle the class action following the fairness hearing.  Id.

Consequently, this order "will only determine whether the proposed class action settlement deserves preliminary approval and lay the groundwork for a future fairness hearing."  See id. (citations omitted).

A.   Class Certification

To be certified, the putative class and subclasses must satisfy both the requirements of Federal Rule of Civil Procedure 23(a) and (b).  Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th Cir. 2013).  The court will address each subpart in turn.

6

1              1.   Rule 23(a)

2              In order to certify a class, Rule 23(a)'s four

3 threshold requirements must be met: numerosity, commonality,

4 typicality, and adequacy of representation.  Fed. R. Civ. P.

5 23(a).  "Class certification is proper only if the trial court

6 has concluded, after a 'rigorous analysis,' that Rule 23(a) has

7 been satisfied."  Wang v. Chinese Daily News, Inc., 737 F.3d 538,

8 542-43 (9th Cir. 2013) (quoting Wal-Mart Stores, Inc. v. Dukes,

9 564 U.S. 338, 351 (2011)).

10                   a.   Numerosity

11             While Rule 23(a)(1) requires that the class be "so

12 numerous that joinder of all members is impracticable," Fed. R.

13 Civ. P. 23(a)(1), it does not require "a strict numerical cut-

14 off."  McCurley v. Royal Seas Cruises, Inc., 331 F.R.D. 142, 167

15 (S.D. Cal. 2019) (citations omitted).  Generally, "the numerosity

16 factor is satisfied if the class compromises 40 or more members."

17 Id. (quoting Celano v. Marriott Int'l, Inc., 242 F.R.D. 544, 549

18 (N.D. Cal. 2007)).  Here, the parties estimate that there are

19 approximately 423 Non-Exempt Wage Statement Class Members, 502

20 Sick Pay Class Members, and 131 Former Employee Sub-Class

21 Members.  (See Baysinger Decl. ¶ 37.)  The numerosity element is

22 therefore satisfied.

23                   b.   Commonality

24             Next, Rule 23(a) requires that there be "questions of

25 law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).

26 Rule 23(a)(2) is satisfied when there is a "common contention . .

27 . of such a nature that it is capable of classwide resolution --

28 which means that determination of its truth or falsity will

                                  7

1   resolve an issue that is central to the validity of each one of

2   the claims in one stroke." Wal-Mart Stores, 564 U.S. at 350.

3   "Plaintiffs need not show that every question in the case, or

4   even a preponderance of questions, is capable of classwide

5   resolution.  So long as there is 'even a single common question,'

6   a would-be class can satisfy the commonality requirement of Rule

7   23(a)(2)." Wang, 737 F.3d at 544 (citing id.).

8        Here, the claims implicate common questions of law and

9   fact because they are all premised on policies that applied to

10   all class members equally.  All members of each subclass were

11   non-exempt hourly employees of defendants and thus share common

12   legal questions with their respective subclass members,

13   including: (1) whether defendants' policy of failing to provide

14   wage statements that accurately identified the total hours worked

15   during the pay period and failing to pay overtime wages violated

16   California Labor Code section 226, California Business and

17   Professions Code § 17200, and the California PAGA; and (2)

18   whether defendants' policy of failing to compensate its employees

19   for redeemed sick leave at their regular rate of pay violated

20   California Labor Code section 246 and California Business and

21   Professions Code § 17200.  (See FAC.)

22        Generally, "challeng[ing] a policy common to the class

23   as a whole creates a common question whose answer is apt to drive

24   the resolution of the litigation." Ontiveros, 2014 WL 3057506,

25   at *5.  Even if individual members of the class will be entitled

26   to different amounts of damages because, for instance, they

27   worked for defendants for different amounts of time or were

28   compensated for redeemed sick leave at the incorrect rate of pay

less often than others, "the presence of individual damages
cannot, by itself, defeat class certification." Leyva, 716 F.3d
at 514 (quoting Wal-Mart Stores, 564 U.S. at 362).  Accordingly,
these common questions of law and fact satisfy Rule 23(a)'s
commonality requirement.

c.  Typicality

Rule 23(a) further requires that the "claims or
defenses of the representative parties [be] typical of the claims
or defenses of the class." Fed. R. Civ. P. 23(a)(3).  The test
for typicality is "whether other members have the same or similar
injury, whether the action is based on conduct which is not
unique to the named plaintiffs, and whether other class members
have been injured by the same course of conduct." Sali v. Corona
Reg'l Med. Ctr., 909 F.3d 996, 1006 (9th Cir. 2018) (quoting
Hanon v. Dataprods. Corp., 976 F.2d 497, 508 (9th Cir. 1992)).
Here, the named plaintiff satisfies the typicality requirement.
The named plaintiff and the other class members all worked for
defendants and performed similar, if not the same, work.
Plaintiff alleges that she received the same inaccurate wage
statements, failed to receive overtime pay, and failed to receive
sick pay commensurate with her regular rate of pay in the same
manner as other class members.  (See FAC ¶¶ 18, 24, 37-41.)
Plaintiff is therefore a member of both the Sick Pay Class and
the Non-Exempt Wage Statement Class.  Because plaintiff is a
former employee of defendants, she is, specifically, also a
member of the Former Employee Sub-Class.  (Id. at ¶ 39.)  Though
this entitles plaintiff to statutory waiting-time penalties that
members of the Sick Pay Class who still work for defendants are

1  not entitled to, because these waiting-time penalties ultimately

2  arise from the same conduct on the part of defendants--namely,

3  failing to provide sick pay at the employee's "regular rate of

4  pay" during the employee's employment--the court finds that

5  plaintiff's claim is "reasonably co-extensive with those of the

6  absent class members" in the Sick Pay Class.  See McKenzie v.

7  Federal Express Corp., 275 F.R.D. 290, 297 (C.D. Cal. 2011)

8  (Feess, J.) (holding former employee's claims to be typical of

9  class, which included current employees, because claims were

10 based on the same conduct by defendant employer).  Accordingly,

11 the typicality requirement is satisfied.

12              d.   Adequacy of Representation

13          Finally, Rule 23(a) requires that "the representative

14 parties will fairly and adequately protect the interests of the

15 class."  Fed. R. Civ. P. 23(a)(4).  Rule 23(a)(4) "serves to

16 uncover conflicts of interest between named parties and the class

17 they seek to represent" as well as the "competency and conflicts

18 of class counsel."  Amchem Prods., Inc. v. Windsor, 521 U.S. 591,

19 625, 626 n.20 (1997).  The court must consider two factors: (1)

20 whether the named plaintiff and her counsel have any conflicts of

21 interest with other class members and (2) whether the named

22 plaintiff and her counsel will vigorously prosecute the action on

23 behalf of the class.  In re Hyundai and Kia Fuel Econ. Litig.,

24 926 F.3d 539, 566 (9th Cir. 2019) (quoting Hanlon v. Chrysler

25 Corp., 150 F.3d 1011, 1020 (9th Cir. 1998)).

26              i.   Conflicts of Interest

27          The first portion of the adequacy inquiry considers

28 whether plaintiff's interests are aligned with those of the

1  class.  "[A] class representative must be part of the class and
2  possess the same interest and suffer the same injury as the class
3  members." Amchem, 521 U.S. at 625-26 (internal modifications
4  omitted).

5          In most respects, the named plaintiff's interests
6  appear to be aligned with those of the class. (See generally
7  FAC.)  Plaintiff was employed in the same workplace, performed
8  similar tasks, and was subjected to the same policies and
9  practices that allegedly violated California law as other class
10 members. (Id.)  Despite the many similarities, plaintiff alone
11 stands to benefit for her participation in this litigation by
12 receiving an incentive award of $2,500. (Settlement Agreement ¶
13 16.)  The use of an incentive award raises the possibility that a
14 plaintiff's interest in receiving that award will cause her
15 interests to diverge from the class's in a fair settlement.
16 Staton, 327 F.3d at 977-78.  Consequently, the court must
17 "scrutinize carefully the awards so that they do not undermine
18 the adequacy of the class representatives." Radcliffe v.
19 Experian Info. Sys., Inc., 715 F.3d 1157, 1163 (9th Cir. 2013).

20         Plaintiff's counsel estimates that class members will
21 receive somewhere between $49.80 and $1,144.03, depending on how
22 many classes they are members of. (See Baysinger Decl. ¶ 63.)
23 Plaintiff's proposed award of $2,500 represents substantially
24 more.  However, incentive awards "are intended to compensate
25 class representatives for work done on behalf of the class, to
26 make up for financial or reputational risk undertaken in bringing
27 the action, and, sometimes, to recognize their willingness to act
28 as a private attorney general." Rodriguez v. West Publ'g Corp.,

1   563 F.3d 948, 958-59 (9th Cir. 2009).  Indeed, the Ninth Circuit

2   has consistently recognized incentive awards are "fairly typical"

3   way to "compensate class representatives for work done on behalf

4   of the class" or "to make up for financial or reputational risk

5   undertaken in bringing the action."  Id.

6          Here, a $2,500 incentive payment appears appropriate at

7   this stage.  The payment represents approximately 0.6% of the

8   total settlement amount.  Plaintiff represents that she has spent

9   significant amounts of time participating in this case and has

10  exposed herself to significant reputational and professional

11  risks by tying her name to a class action lawsuit against her

12  former employer.  (Decl. of Angela Flores ("Flores Decl.") ¶¶ 12-

13  13 (Docket No. 36-6).)  The amount of the requested service award

14  is also less than what other courts have determined is

15  "presumptively reasonable" in the Ninth Circuit.  See Roe v.

16  Frito-Lay, Inc., No. 14CV-00751, 2017 WL 1315626, at *8 (N.D.

17  Cal. Apr. 7, 2017) ("[A] $5,000 incentive award is 'presumptively

18  reasonable' in the Ninth Circuit.") (collecting cases).

19         Plaintiff's individual FEHA claims do not pose a

20  problem either.  See Roberts v. Electrolux Home Prods., Inc.,

21  SACV12-1644-CAS(VBKx), 2014 WL 4568632, at *9 (C.D. Cal. 2014)

22  (noting that individual settlement amounts paid to named class

23  representatives for unique harms suffered did not undermine

24  adequacy).  Plaintiff's individual claims of employment

25  discrimination arise out of different policies and practices

26  employed by defendants, and both she and her counsel represent

27  that she negotiated her individual claims completely separately

28  from her claims brought on behalf of class members in this case

1  (though her individual discrimination claims were resolved at the

2  same mediation as the class action claims at issue here).  (See

3  Flores Decl. ¶ 11; Baysinger Decl. ¶ 79.)  Notice of plaintiff's

4  individual claims and the fact that she has settled them will

5  also be provided to class members as part of the Notice Packet.

6  (See Proposed Notice ¶ 4.F.)

7          Rule 23(a)(4)'s adequacy requirement is aimed at

8  ensuring that class representatives do not have adverse interests

9  that are fundamental to the suit and "go to the heart of the

10  litigation," from representing other class members, not at

11  prohibiting class representatives from having any unique

12  interests at all.  See In re Online DVD-Rental Antitr. Litig.,

13  779 F.3d 934, 942 (9th Cir. 2015) (citing Rubenstein, Newberg on

14  Class Actions § 3:58 (5th Ed. 2011)); Dukes v. Wal-Mart Stores,

15  Inc., 222 F.R.D. 137, 168-69 (9th Cir. 2004) (holding that named

16  plaintiffs could represent class even though they possessed

17  unique interests as supervisory employees of defendant).  Though

18  the parties agreed to keep the amount of Flores' individual

19  settlement confidential, counsel represented at oral argument

20  that it was for a de minimus value, indicating that it did not

21  likely interfere with Flores' ability to represent the interests

22  of the class during negotiations.  The settlement of separate,

23  individual claims that arose out of circumstances unique to

24  Flores, through negotiations which the parties represent occurred

25  separately from negotiations regarding the class claims, does not

26  render Flores fundamentally unfit to act as a class

27  representative.  See Roberts, 2014 WL 4568632, at *9 (individual

28  settlement amounts paid to named class representatives for unique

13

1   harms did not undermine adequacy).

2          Though Flores' proposed incentive award and settlement
3   of her individual claims do not appear to create a conflict of
4   interest, the court emphasizes this finding is only a preliminary
5   determination.  Plaintiff represents that she will formally seek
6   the incentive award through a separate motion, to be heard at the
7   final approval hearing.  (Mot. for Prelim. Approval at 4.)  At
8   that time, plaintiff should be prepared to present further
9   evidence of her substantial efforts taken as a class
10  representative to better justify the discrepancy between her
11  award and those of the unnamed class members.  The court will
12  also note any objections concerning the settlement of plaintiff's
13  individual claims against defendants, if any are made, at the
14  time of the final approval hearing.

15                    ii.  Vigorous Prosecution

16         The second portion of the adequacy inquiry examines the
17  vigor with which the named plaintiff and her counsel have pursued
18  the class's claims.  "Although there are no fixed standards by
19  which 'vigor' can be assayed, considerations include competency
20  of counsel and, in the context of a settlement-only class, an
21  assessment of the rationale for not pursuing further litigation."
22  Hanlon, 150 F.3d at 1021.

23         Here, class counsel appear to be experienced employment
24  and class action litigators fully qualified to pursue the
25  interests of the class.  (See Baysinger Decl. ¶¶ 84-88.)  Class
26  counsel represent that they have litigated dozens of wage and
27  hour class actions as lead counsel in state and federal court and
28  that they have carefully vetted their clients' claims and

                              14

1  defendants' arguments through rigorous legal analysis.  (<u>Id.</u>

2  (citing cases); Decl. of Robert J. Wasserman ¶¶ 21-23 (Docket No.

3  36-3).)  This experience, coupled with the diligent work expended

4  on this case, suggest that class counsel are well-equipped to

5  handle this case.  Accordingly, the court finds that plaintiff

6  and plaintiff's counsel are adequate representatives of the

7  class.

8           2.   <u>Rule 23(b)</u>

9           After fulfilling the threshold requirements of Rule

10  23(a), the proposed class must satisfy the requirements of one of

11  the three subdivisions of Rule 23(b).  <u>Leyva</u>, 716 F.3d at 512.

12  Plaintiff seeks provisional certification under Rule 23(b)(3),

13  which provides that a class action may be maintained only if "the

14  court finds that questions of law or fact common to class members

15  predominate over questions affecting only individual members" and

16  "that a class action is superior to other available methods for

17  fairly and efficiently adjudicating the controversy."  Fed. R.

18  Civ. P. 23(b)(3).  The test of Rule 23(b)(3) is "far more

19  demanding," than that of Rule 23(a).  <u>Wolin v. Jaguar Land Rover</u>

20  <u>N. Am., LLC</u>, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting <u>Amchem</u>,

21  521 U.S. at 623-24).

22                a.   <u>Predominance</u>

23           "The predominance analysis under Rule 23(b)(3) focuses

24  on 'the relationship between the common and individual issues' in

25  the case and 'tests whether proposed classes are sufficiently

26  cohesive to warrant adjudication by representation.'"  <u>Wang</u>, 737

27  F.3d at 545 (quoting <u>Hanlon</u>, 150 F.3d at 1022).  However,

28  plaintiff is not required to prove that the predominating

                                   15

1   question will be answered in her favor at the class certification

2   stage.  Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455,

3   468 (2013).

4          Here, the claims brought by the proposed settlement

5   class all arise from defendants' same conduct.  For example,

6   defendants failed to provide all Non-Exempt Wage Statement Class

7   members with wage statements that accurately identified the total

8   hours worked during the pay period and failed to pay overtime

9   wages.  (See Baysinger Decl. ¶¶ 48-49.)  Defendants also failed

10  to compensate all Sick Pay Class members for redeemed sick leave

11  at their regular rate of pay, and to provide Former Employee Sub-

12  Class Members with this pay upon their departure from the

13  company.  (Id. at ¶¶ 44-45.)  These policies serve as common

14  facts uniting plaintiff's individual claims and the class claims.

15  Common questions of law include whether defendants' policies and

16  practices violated various sections of the California Labor Code,

17  the California Business and Professions Code, as well as whether

18  defendants' violations of the California Labor Code give rise to

19  penalties under the PAGA. (See FAC ¶¶ 45-81.)  The class claims

20  thus demonstrate a "common nucleus of facts and potential legal

21  remedies" that can properly be resolved in a single adjudication.

22  See Hanlon, 150 F.3d at 1022.  Accordingly, the court finds

23  common questions of law and fact predominate over questions

24  affecting only individual class members.

25                    b.   Superiority

26          Rule 23(b)(3) sets forth four non-exhaustive factors

27  that courts should consider when examining whether "a class

28  action is superior to other available methods for fairly and

efficiently adjudicating the controversy."  Fed. R. Civ. P.
23(b)(3).  They are: "(A) the class members' interests in
individually controlling the prosecution or defense of separate
actions; (B) the extent and nature of any litigation concerning
the controversy already begun by or against class members; (C)
the desirability or undesirability of concentrating the
litigation of the claims in the particular forum; and (D) the
likely difficulties in managing a class action."  Id.  Factors
(C) and (D) are inapplicable because the parties settled this
action before class certification.  See Syed v. M-I LLC, No.
1:14-cv-00742 WBS BAM, 2019 WL 1130469, at *6 (E.D. Cal. Mar. 12,
2019) (citation omitted).  Therefore, the court will focus
primarily on factors (A) and (B).

          Rule 23(b)(3) is concerned with the "vindication of the
rights of groups of people who individually would be without
effective strength to bring their opponents into court at all."
Amchem, 521 U.S. at 617.  When class members' individual recovery
is relatively modest, the class members' interests generally
favors certification.  Zinser v. Accufix Res. Inst., Inc., 253
F.3d 1180, 1190 (9th Cir. 2001).  Again, plaintiff's counsel
estimates that class members will receive somewhere between
$49.80 and $1,144.03, depending on how many classes they are
members of.  (See Baysinger Decl. ¶ 63.)  This anticipated sum,
while modest in light of the overall $411,000 recovery,
represents a strong result for the class given the strength of
the claims, the risks of litigation and delay, and the
defendants' potential exposure.  (See id. at ¶¶ 41-73.)
Accordingly, factor (A) weighs in favor of certification.

17

1        Factor (B), concerning the "extent and nature of the
2   litigation," is "intended to serve the purpose of assuring
3   judicial economy and reducing the possibility of multiple
4   lawsuits."   Zinser, 253 F.3d at 1191 (quoting 7A Charles Alan
5   Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and
6   Procedure § 1780 at 568-70 ("Wright & Miller") (2d ed. 1986)).
7   If the court finds that several other actions already are pending
8   and that "a clear threat of multiplicity and a risk of
9   inconsistent adjudications actually exist, a class action may not
10  be appropriate since, unless the other suits can be enjoined, . .
11  . a Rule 23 proceeding only might create one more action."   Id.
12  (quoting Wright and Miller at 568-70)).   "Moreover, the existence
13  of litigation indicates that some of the interested parties have
14  decided that individual actions are an acceptable way to proceed,
15  and even may consider them preferable to a class action."   Id.
16  (quoting Wright and Miller at 568-70).

17        Here, plaintiff represents that two other class actions
18  against defendants are currently pending in California state
19  courts.   (See Baysinger Decl. ¶¶ 8-10, 13-14.) The first, Prado
20  v. Dart Container Corp. of California, No. 18CV336217 ("the Prado
21  Class Action"), is a wage and hour class action that was filed in
22  Santa Clara Superior Court on October 12, 2018, and appears to
23  still be pending.   (Id.)   The Prado Class Action consists of
24  claims brought under the Federal Credit Reporting Act ("FCRA") as
25  well as a number of general wage and hour claims.   (Id.)   Though
26  the Prado Class Action also contains a claim for failure to
27  provide accurate wage statements, this claim is simply derivative
28  of the Prado plaintiff's other wage and hour claims (i.e., the

18

wage statements failed to include the overtime hours and premium wages for missed meal and rest periods that the <u>Prado</u> plaintiff also alleges defendants failed to provide).  <u>See</u> <u>Prado</u>, No. 18CV336217, Compl. ¶¶ 48-52, 165-71.  The <u>Prado</u> plaintiff therefore alleges that defendants' wage statements suffered from deficiencies for reasons that are slightly different than Flores, who alleges that defendants' wage statements failed to include a value for the total number of hours worked, included inaccurate values for the number of hours worked in each pay category, and that hours not actually worked, including sick time and vacation time, were included in the "hours" column, all of which made it difficult for Flores to determine if she was being compensated at an accurate rate for all of her hours worked.  (<u>See</u> FAC ¶¶ 12-17; 45-51.)  Because both Prado and Flores allege that defendants failed to compensate them adequately for overtime hours worked and provided inadequate wage statements (whether those wage statements were simply derivative of the failure to adequately compensate employees for their hours worked), wage statement and overtime claims in the two actions have the potential to overlap, at least to some extent. (<u>See</u> <u>id.</u>)  However, Flores' complaint also contains claims for failure to properly calculate and pay redeemed sick pay wages not found in the <u>Prado</u> Class Action, and the <u>Prado</u> Class Action contains several claims under the FCRA not found here.  <u>See</u> <u>Cartwright v. Viking Indus., Inc.</u>, No. 2:07-cv-02159 FCD EFB, 2009 WL 2982887, at *14-15 (E.D. Cal. Sep. 14, 2009) (holding class treatment to be superior under Rule 23(b)(3) because claims and purported class were broader than those found in parallel state court class action).

1    The second case, <u>Alvarado v. Dart Container Corp. of</u>

2  <u>California</u>, No. RIC1211707 ("the <u>Alvarado</u> Class Action"), was

3  filed in Riverside Superior Court in 2012.  (<u>Id.</u> at ¶ 13.)

4  Similar to the <u>Prado</u> Class Action, the <u>Alvarado</u> Class Action

5  contains wage statement claims that are derivative of claims for

6  alleged overtime underpayments, and does not contain any claims

7  related to sick pay wages.  (<u>See id.</u>; <u>Alvarado</u>, No. RIC1211707,

8  Compl. ¶¶ 20-21.)  Plaintiff represents that the <u>Alvarado</u> Class

9  Action settled in April 2020, obtained preliminary approval of

10  the settlement from the Riverside Superior Court in August 2020,

11  and that this settlement implicates only non-exempt employees in

12  just one of defendant's warehouses in Corona, California. (<u>See</u>

13  Baysinger Decl. ¶¶ 13-14.)

14    Because <u>Prado</u> and <u>Alvarado</u> have also been brought as

15  putative class actions, they do not "indicate[] that some of the

16  interested parties have decided that individual action are an

17  acceptable [or preferable] way to proceed."  <u>See</u> <u>Zinser</u>, 253 F.3d

18  at 1191.  Though Flores' case was filed after the <u>Prado</u> and

19  <u>Alvarado</u> matters, the <u>Prado</u> matter has not yet settled or

20  otherwise been resolved, <u>see</u> <u>Shwartz v. Lights of America, Inc.</u>,

21  No. CV 11-01712 JVS (MLGx), 2012 WL 12883222 (C.D. Cal. Jun. 15,

22  2012) (holding class action to be superior under Rule 23(b)(3)

23  because putative class members had not yet received any relief in

24  parallel FTC action), and the Settlement Agreement expressly

25  excludes any individuals who participated in the <u>Alvarado</u> Class

26  Action settlement (<u>see</u> Settlement Agreement ¶ 1.15).  The

27  Settlement Agreement also informs class members of the existence

28  of the <u>Prado</u> Class Action and of the potential for overlap among

1 some of the claims, and gives class members the opportunity to

2 opt out of the settlement to pursue any potentially overlapping

3 claims as part of the Prado Class Action if they wish.  (See

4 Proposed Notice at 2-3.)  The risk is therefore low that class

5 certification here will merely "create one more action" that

6 subjects defendants to a multiplicity of litigation or risk of

7 inconsistent judgments.  Zinser, 253 F.3d at 1191.  Accordingly,

8 factor (B) also weighs in favor of certification.  See id.

9                    3.   Rule 23(c)(2) Notice Requirements

10           If the court certifies a class under Rule 23(b)(3), it

11 "must direct to class members the best notice that is practicable

12 under the circumstances, including individual notice to all

13 members who can be identified through reasonable effort."  Fed.

14 R. Civ. P. 23(c)(2)(B).  Actual notice is not required, but the

15 notice provided must be "reasonably certain to inform the absent

16 members of the plaintiff class."  Silber v. Mabon, 18 F.3d 1449,

17 1454 (9th Cir. 1994) (citation omitted).

18           The parties have jointly agreed to use Phoenix Class

19 Action Administration Solutions ("Phoenix") to serve as the

20 Settlement Administrator.  (Baysinger Decl. ¶ 74.)  Pursuant to

21 the notice plan, defendants will provide Phoenix with the class

22 list data within ten business days of the court's order granting

23 preliminary approval.  (See Settlement Agreement ¶ 28.)  This

24 class list data will include the name, last known address and

25 telephone number, social security number, dates of employment,

26 and pay period data (i.e., the total number of workweeks worked)

27 for each Class Member during each relevant time period.  (Id.)

28           "Notice is satisfactory if it 'generally describes the

21

terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"  See Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004).  The notice will provide, among other things, a description of the case; the terms of the Settlement Agreement, including the total settlement amount and how it will be allocated; information about plaintiff's attorney's fees; the procedures for opting out or objecting to the settlement; an estimate of the individual class member's share; and notice that plaintiff settled her individual FEHA claims with defendants for a separate, confidential amount.  (See Settlement Agreement, Ex. 1.)  The notice will also inform class members of the ongoing Prado Class Action, that some its claims may overlap with the claims alleged in this matter, and that, to the extent there is overlap, the Prado claims will be resolved along with the class claims in this action upon the court's final approval of the Settlement Agreement.  (See id. at 2.)  Class members will be informed that they have the option to opt out of this action if they would prefer to pursue their claims against defendants as part of the Prado Class Action.  All class members will receive individual notice by first class mail.  (Settlement Agreement ¶ 29.)

     The system set forth in the Settlement Agreement is reasonably calculated to provide notice to class members and inform class members of their options under the agreement.  Accordingly, the manner of notice and the content of notice is sufficient to satisfy Rule 23(c)(2)(B).

     B.   Rule 23(e): Fairness, Adequacy, and Reasonableness of

1

Proposed Settlement

2

Because the proposed class preliminarily satisfies the

3

requirements of Rule 23(a) and (b), the court must consider

4

whether the terms of the parties' settlement appear fair,

5

adequate, and reasonable.  See Fed. R. Civ. P. 23(e)(2).  To

6

determine the fairness, adequacy, and reasonableness of the

7

agreement, Rule 23(e) requires the court to consider four

8

factors: "(1) the class representatives and class counsel have

9

adequately represented the class; (2) the proposal was negotiated

10

at arm's length; (3) the relief provided for the class is

11

adequate; and (4) the proposal treats class members equitably

12

relative to each other."  Id.  The Ninth Circuit has also

13

identified eight additional factors the court may consider, many

14

of which overlap substantially with Rule 23(e)'s four factors:

15
16
17
18
19

> (1) The strength of the plaintiff's case; (2) the
> risk, expense, complexity, and likely duration of
> further litigation; (3) the risk of maintaining class
> action status throughout the trial; (4) the amount
> offered in settlement; (5) the extent of discovery
> completed and the stage of the proceedings; (6) the
> experience and views of counsel; (7) the presence of a
> governmental participant; and (8) the reaction of the
> class members to the proposed settlement.

20

See Staton, 327 F.3d at 959.

21

However, many of these factors cannot be considered

22

until the final fairness hearing.  Accordingly, the court's

23

review will be confined to resolving any "'glaring deficiencies'

24

in the settlement agreement."[1]  Syed, 2019 WL 1130469, at *7

25

_____

26

[1]    Because claims under PAGA are "a type of qui tam
action" in which an employee brings a claim as an agent or proxy

27

of the state's labor law enforcement agencies, the court will
have to "review and approve" settlement of plaintiff's and other

28

class members' PAGA claims when the parties move for final

23

1   (citations omitted).

2           1.   Adequate Representation

3         The court must first consider whether "the class

4 representatives and class counsel have adequately represented the

5 class."  Fed. R. Civ. P. 23(e)(2)(A).  This analysis is

6 "redundant of the requirements of Rule 23(a)(4) . . . ."  Hudson

7 v. Libre Tech., Inc., No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060,

8 at *5 (S.D. Cal. May 13, 2020) (quoting Rubenstein, 4 Newberg on

9 Class Actions § 13:48 (5th ed.)) see also In re GSE Bonds Antitr.

10 Litig., 414 F. Supp. 3d 686, 701 (S.D.N.Y. 2019) (noting

11 similarity of inquiry under Rule 23(a)(4) and Rule 23(e)(2)(A)).

12         Because the Court has found that the proposed class

13 satisfies Rule 23(a)(4) for purposes of class certification, the

14 adequacy factor under Rule 23(e)(2)(A) is also met.  See Hudson,

15 2020 WL 2467060, at *5.

16

---

17 approval of the Settlement Agreement.  See Cal. Lab. Code §
2669(k)(2); Sakkab v. Luxottica Retail N. Am., Inc., 803 F.3d

18 425, 435-36 (9th Cir. 2015).

19       Though "[the] PAGA does not establish a standard for
evaluating PAGA settlements," Rodriguez, 2019 WL 331159 at *4

20 (citing Smith v. H.F.D. No. 55, Inc., No. 2:15-CV-01293 KJM KJN,
2018 WL 1899912, at *2 (E.D. Cal. Apr. 20, 2018)), a number of

21 district courts have applied the eight Staton factors, listed
above, to evaluate PAGA settlements.  See, e.g., Smith, 2018 WL

22 1899912, at *2; Ramirez, 2017 WL 3670794, at *3; O'Connor v. Uber
Techs., 201 F. Supp. 3d 1110, 1134 (N.D. Cal. 2016).  "Many of

23 these factors are not unique to class action lawsuits and bear on
whether a settlement is fair and has been reached through an

24 adequate adversarial process."  See Ramirez, 2017 WL 3670794, at
*3.  Thus, the court finds that these factors will also govern

25 its review of the PAGA settlement.  See id.  As noted above,
because some of these factors cannot be evaluated until the final

26 fairness hearing, the court will limit its review of the PAGA
settlement on preliminary approval to determining whether there

27 are any "'glaring deficiencies' in the settlement agreement."
See Syed, 2019 WL 1130469, at *7 (citations omitted).

28

1                    2.   Negotiations of the Settlement Agreement

2                    Counsel for both sides appear to have diligently

3    pursued settlement after thoughtfully considering the strength of

4    their arguments and potential defenses.  The parties participated

5    in an arms-length mediation before an experienced employment

6    litigation mediator, Kim Deck, on August 31, 2020, ultimately

7    agreeing to the mediator's proposal proposed by Ms. Deck at the

8    close of mediation.  (Baysinger Decl. ¶¶ 34-36.)  Given the

9    sophistication and experience of plaintiff's counsel, the

10   parties' representation that the settlement reached was the

11   product of arms-length bargaining, and the parties'

12   representation that negotiations regarding plaintiff's individual

13   FEHA claims occurred separately from negotiations regarding the

14   class' claims (although at the same mediation), the court does

15   not question that the proposed settlement is in the best interest

16   of the class.  See Fraley v. Facebook, Inc., 966 F. Supp. 2d 939,

17   942 (N.D. Cal. 2013) (holding that a settlement reached after

18   informed negotiations "is entitled to a degree of deference as

19   the private consensual decision of the parties" (citing Hanlon,

20   150 F.3d at 1027)).

21                    3.   Adequate Relief

22                    In determining whether a settlement agreement provides

23   adequate relief for the class, the court must "take into account

24   (i) the costs, risks, and delay of trial and appeal; (ii) the

25   effectiveness of any proposed method of distributing relief to

26   the class, including the method of processing class-member

27   claims; (iii) the terms of any proposed award of attorney's fees,

28   including timing of payment; and (iv) any [other] agreement[s]"

                                    25

1  made in connection with the proposal.  <u>See</u> Fed. R. Civ. P.

2  23(e)(2)(C); <u>Baker v. SeaWorld Entm't, Inc.</u>, No. 14-cv-02129-MMA-

3  AGS, 2020 WL 4260712, at *6-8 (S.D. Cal. Jul. 24, 2020).

4         Here, plaintiff's counsel estimates that class members

5  who do not opt out will receive somewhere between $49.80 and

6  $1,144.03, depending on how many classes they are members of.

7  (<u>See</u> Baysinger Decl. ¶ 63.)  Because the amount class members

8  receive is based on the number of workweeks each class member

9  worked or how much sick pay time for which they were improperly

10 compensated during the period covered by the Settlement

11 Agreement, the court finds that it is an effective method of

12 distributing relief to the class.

13        The Settlement Agreement also sets aside $15,000 of the

14 common fund for civil penalties under PAGA, $3,750 of which will

15 be distributed evenly among class members who do not opt out.

16 (<u>See</u> Baysinger Decl. ¶ 76.)  While plaintiff's counsel estimates

17 that plaintiff's Labor Code claims could be worth up to

18 $1,143,384.51 and that the PAGA claim could be worth up to an

19 additional $1,411,750.00, counsel recognizes that defendants had

20 legitimate defenses to these claims that risked reducing the

21 amount plaintiff and the class could recover at trial, including

22 that (1) that plaintiff does not have Article III standing to

23 pursue the wage statement claims under <u>Spokeo v. Robins</u>, 136 S.

24 Ct. 1540 (2016); (2) that the wage statements actually identify a

25 number that equates to total hours worked (though not labeled as

26 such); (3) that plaintiff and other Non-Exempt Class Members were

27 not injured by any technical omissions from the wage statements;

28 (4) that redeemed sick pay cannot underscore a waiting time

penalty claim because such payments are not "wages"; and (5) that any violations by defendants were not sufficiently willful to allow for the imposition of waiting time penalties. (See Baysinger Decl. ¶¶ 52-70.)  Because the amount of penalties plaintiff would be entitled to under the PAGA depends on how many violations of the California Labor Code defendants committed, these defenses also potentially apply to plaintiff's PAGA claim. (See id.)

        Plaintiff's counsel represents that, given the strength of plaintiff's claims and defendants' potential exposure, the settlement and resulting distribution provides a strong result for the class. (Id. at ¶¶ 41-70.)  They estimate that the amount of the MSA allocated to resolving the non-PAGA claims, $396,000, represents approximately 34.6% of the maximum damages that could be recovered on behalf of the class in this matter. (Id. at ¶ 53.)  Based on their experience litigation class actions, defendants' likely defenses, difficulties in proving "willful" violations of the law, and general judicial skepticism of wage statement claims seen as "technical" in nature (i.e., that do not implicate substantive failure to pay wages), however, plaintiff's counsel estimates that this amount actually represents closer to 68% of a more "realistic" appraisal of the value of the class' claims and that it is therefore in the best interest of the class. (See id. at ¶¶ 56-65.)  There also does not appear to be any "glaring deficiency" in the amount of the common settlement fund reserved for PAGA penalties, see Syed, 2019 WL 1130469, at *7 (citations omitted), at least compared to settlements in other wage and hour and PAGA actions, where the parties appear to

maximize the total amount of the settlement that is paid to class members.  See, e.g., Nen Thio v. Genji, LLC, 14 F. Supp. 3d 1324, 1330 (N.D. Cal. 2014) (preliminarily approving $10,000 in PAGA penalties out of a total settlement amount of $1,250,000); Garcia v. Gordon Trucking, Inc., No. 1:10-cv-0324 AWI SKO, 2012 WL 5364575 (E.D. Cal. Oct. 31, 2012) (granting final approval of $10,000 in PAGA penalties out of a total settlement amount of $3,700,000).

Thus, while the settlement amount represents "more than the defendants feel those individuals are entitled to" and will potentially be "less than what some class members feel they deserve," the settlement offers class members the prospect of some recovery, instead of none at all.  See Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 628 (9th Cir. 1982).

The Settlement Agreement further provides for an award of attorney's fees totaling 33% of the $411,000 Maximum Settlement Amount.  (See Settlement Agreement ¶ 16.)  If a negotiated class action settlement includes an award of attorney's fees, then the court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).

"Under the 'common fund' doctrine, 'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'"  Staton, 327 F.3d at 969 (quoting Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980)).

The Ninth Circuit has recognized two different methods for calculating reasonable attorney's fees in common fund cases: the lodestar method or the percentage-of-recovery method.  Id. at 941-42.  In the lodestar method, courts multiply the number of hours the prevailing party expended on the litigation by a reasonable hourly rate.  Id.  Under the percentage-of-recovery method, courts typically delineate 25% of the total settlement as the fee.  Hanlon, 150 F.3d at 1029.  However, courts may adjust this figure if the record reflects "special circumstances justifying a departure."  Bluetooth, 654 F.3d at 942.  Where, as here, the settlement has produced a common fund for the benefit of the entire class, courts have discretion to use either method.  Id. at 942 (citing In re Mercury Interactive Corp., 618 F.3d 988, 992 (9th Cir. 2010)).

Plaintiff's counsel have represented that they will seek fees totaling 33% of the common fund by filing a separate motion for attorney's fees and costs pursuant to Federal Rule 23(h).  (See Settlement Agreement ¶ 21.)  The court will defer consideration of the reasonableness of counsel's fees until the fee motion is filed.  Class counsel is cautioned that the reasons for the attorney's fees should be explained further in that motion.  Factors considered in examining the reasonableness of the fee may include: (1) whether the results achieved were exceptional; (2) risks of litigation; (3) non-monetary benefits conferred by the litigation; (4) customary fees for similar cases; (5) the contingent nature of the fee and financial burden carried by counsel; and (6) the lawyer's "reasonable expectations, which are based on the circumstances of the case

1  and the range of fee awards out of common funds of comparable

2  size."  See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-50

3  (9th Cir. 2002).  A lodestar cross-check, including the hours

4  worked by each attorney, paralegal, and case manager multiplied

5  by their hourly rate, is also a valuable means by which to check

6  the reasonableness of requested fees.  In the event that class

7  counsel cannot demonstrate the reasonableness of the requested

8  attorney's fee, the court will be required to reduce the fee to a

9  reasonable amount or deny final approval of the settlement.  See

10  id. at 1047.

11        In light of the claims at issue, defendants' potential

12  exposure, the risk to plaintiff and to the class of proceeding to

13  trial, and the fact that the court will separately assess the

14  reasonableness of plaintiff's request for attorney's fees at a

15  later date, the court finds that the substance of the settlement

16  is fair to class members and thereby "falls within the range of

17  possible approval," both for plaintiff's California Labor Code

18  claims and his PAGA claim.  See Tableware, 484 F. Supp. 2d at

19  1079; Ramirez, 2017 WL 3670794, at *3.  Counsel has not directed

20  the court to any other relevant agreements that would alter this

21  analysis.  The court therefore finds that Rule 23(e)'s third

22  factor is satisfied.  See Fed. R. Civ. P. 23(e)(C).

23                4.   Equitable Treatment of Class Members

24        Finally, the court must consider whether the Settlement

25  Agreement "treats class members equitably relative to each

26  other."  See Fed. R. Civ. P. 23(e)(2)(D).  In doing so, the Court

27  determines whether the settlement "improperly grant[s]

28  preferential treatment to class representatives or segments of

                              30

1    the class." Hudson, 2020 WL 2467060, at *9 (quoting Tableware,

2    484 F. Supp. at 1079.

3          Here, the Settlement Agreement does not improperly

4    discriminate between any segments of the class, as all class

5    members are entitled to monetary relief based on the number of

6    compensable workweeks they spent working for defendants, the

7    amount of redeemed sick pay they were improperly compensated for,

8    or both. See id. While the Settlement Agreement allows

9    plaintiff to seek an incentive award of $2,500, plaintiff will

10   have to submit additional evidence documenting her time and

11   effort spent on this case to ensure that her additional

12   compensation above other class members is justified. See Hudson,

13   2020 WL 2467060, at *9. The court will retain the discretion to

14   award less than the requested $2,500 if it finds that such an

15   award is not warranted by plaintiff's submission. See Willner v.

16   Manpower Inc., No. 11-CV-02846-JST, 2015 WL 3863625, at *9 (N.D.

17   Cal. June 22, 2015) (reducing $11,000 service award to $7,500).

18   The court therefore finds that the Settlement Agreement treats

19   class members equitably. See Fed. R. Civ. P. 23(e)(D).

20              5.   Remaining Staton Factors

21          In addition to the Staton factors already considered as

22   part of the court's analysis under Rule 23(e)(A)-(D), the court

23   must also take into account "the extent of the discovery

24   completed . . . the presence of government participation, and the

25   reaction of class members to the proposed settlement." Staton,

26   327 F.3d at 959.

27          Through initial disclosures and formal written

28   discovery, defendants provided a substantial amount of

31

1   information that appears to have allowed the parties to

2   adequately assess the value of plaintiff's and the class' claims.

3   (See Baysinger Decl. 16-17, 27; Settlement Agreement ¶ 8.)

4   Defendants provided time and payroll data for all Class members

5   between September 2015 and August 7, 2020, amounting to hundreds

6   of thousands of lines of data.  (Settlement Agreement ¶ 8.)

7   Defendants also provided numerical data related to class sizes

8   and wage statements furnished, and written policies applicable to

9   plaintiff's claims.  (Id.)  For her part, plaintiff retained an

10  expert to assist in evaluating the data to prepare a damages

11  evaluation for mediation and potentially for subsequent

12  litigation.  (Id.)  This factor weighs in favor of preliminary

13  approval of the settlement.

14       The seventh Staton factor, pertaining to government

15  participation, also weighs in favor of approval.  Staton, 327

16  F.3d at 959.  Under the PAGA, "[t]he proposed settlement [must

17  be] submitted to the [LWDA] at the same time that it is submitted

18  to the court."  Cal. Lab. Code § 2669(k)(2).  Here, plaintiff

19  provided a copy of the proposed settlement agreement to the LWDA

20  on November 16, 2020, the day before plaintiff filed her Motion

21  for Preliminary Approval.  (Baysinger Decl. ¶ 77.)  As of the

22  date of this order, the LWDA has not sought to intervene or

23  otherwise objected to the PAGA settlement.  The court will

24  continue to monitor LWDA's involvement until the final fairness

25  hearing.

26       The eighth Staton factor, the reaction of the class

27  members to the proposed settlement, is not relevant at this time

28  because class members have not yet received notice of the

32

1    settlement.  See Staton, 327 F.3d at 959.

2           The court therefore finds that the remaining Staton

3    factors weigh in favor of preliminary approval of the Settlement

4    Agreement.  See Ramirez, 2017 WL 3670794, at *3.

5           In sum, the four factors that the court must evaluate

6    under Rule 23(e) and the eight Staton factors, taken as a whole,

7    appear to weigh in favor of the settlement.  The court will

8    therefore grant preliminary approval of the Settlement Agreement.

9         C.   Rule 23(e) Notice Requirements

10          Under Rule 23(e)(1)(B), "the court must direct notice

11   in a reasonable manner to all class members who would be bound

12   by" a proposed settlement.  Fed. R. Civ. P. 23(e)(1)(B).  While

13   there are "no rigid rules to determine whether a settlement

14   notice to class members satisfies constitutional and Rule 23(e)

15   requirements," Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396

16   F.3d 96, 114 (2d Cir. 2005), notice of settlement--like any form

17   of notice--must comply with due process requirements under the

18   Constitution.  See Rubenstein, 4 Newberg on Class Actions § 8:15

19   (5th ed.).  That is, the notice must be "reasonably calculated,

20   under all the circumstances, to apprise interested parties of the

21   pendency of the action and afford them an opportunity to present

22   their objections."  Mullane v. Cent. Hanover Bank & Tr. Co., 339

23   U.S. 306, 314 (1950).  While actual notice is not required, the

24   notice provided must be "reasonably certain to inform the absent

25   members of the plaintiff class."  Silber, 18 F.3d at 1454

26   (citation omitted).

27          For the reasons provided above in the court's

28   discussion of notice under Rule 23(c)(2), the court finds that

                                33

1    the Agreement's system for providing notice of the settlement is

2    reasonably calculated to provide notice to class members and

3    inform class members of their options under the agreement.

4    Accordingly, the manner of notice and the content of notice is

5    sufficient to satisfy Rule 23(e).

6              IT IS THEREFORE ORDERED that plaintiff's motion for

7    preliminary certification of a conditional settlement class and

8    preliminary approval of the class action settlement (Docket No.

9    36) be, and the same hereby is, GRANTED.

10             IT IS FURTHER ORDERED THAT:

11        (1) the following classes be provisionally certified for the

12   purpose of settlement:

13             (a) all current and former non-exempt California

14   employees of Defendants who were eligible for and used paid sick

15   leave during a workweek when he/she also earned shift

16   differentials, non-discretionary bonuses, commissions, or other

17   remuneration between January 11, 2015 and November 30, 2020 or

18   Preliminary Approval, whichever is earlier, and who did not

19   participate in the class action settlement in Alvarado v. Dart

20   Container Corp., Riverside County Superior Court Case No.

21   RIC1211707 (the "Sick Pay Class");

22             (b) all Sick Pay Class Members who separated from

23   employment at any time between January 11, 2016 and November 30,

24   2020 or Preliminary Approval, whichever is earlier, and who did

25   not participate in the class action settlement in Alvarado v.

26   Dart Container Corp., Riverside County Superior Court Case No.

27   RIC1211707 ("Former Employee Sub-Class")

28             (c) all current and former hourly, nonexempt California

34

employees of Defendants who received a wage statement between January 11, 2018 and November 30, 2020 or Preliminary Approval, whichever is earlier, and (1) worked at least one shift during which he/she both worked overtime and earned a shift differential and 2) did not participate in the class action settlement in Alvarado v. Dart Container Corp., Riverside County Superior Court Case No. RIC1211707 ("Non-Exempt Wage Statement Class");

(2) the proposed settlement is preliminarily approved as fair, just, reasonable, and adequate to the members of the settlement class, subject to further consideration at the final fairness hearing after distribution of notice to members of the settlement class;

(3) for purposes of carrying out the terms of the settlement only:

(a) Angela Flores is appointed as the representative of the settlement class and is provisionally found to be an adequate representative within the meaning of Federal Rule of Civil Procedure 23;

(b) the law firm of Mayall Hurley, P.C. is provisionally found to be a fair and adequate representative of the settlement class and is appointed as class counsel for the purposes of representing the settlement class conditionally certified in this Order;

(4) Phoenix Class Action Administration Solutions is appointed as the settlement administrator;

(5) the form and content of the proposed Notice of Class Action Settlement (Settlement Agreement, Ex. 1) is approved, except to the extent that it must be updated to reflect dates and

1  deadlines specified in this Order and to reflect the fact that
2  the final fairness hearing will occur over Zoom;

3      (6) no later than ten (10) business days from the date this
4  Order is signed, defendants' counsel shall provide the names and
5  contact information of all settlement class members to Phoenix
6  Class Action Administration Solutions;

7      (7) no later than ten (10) business days from the date
8  defendants submit the contact information to Phoenix Class Action
9  Administration Solutions, it shall mail a Notice of Class Action
10  Settlement to all members of the settlement class via first class
11  mail;

12      (8) no later than sixty (60) days from the date Phoenix
13  Class Action Administration Solutions mails the Notice of Class
14  Action Settlement, any member of the settlement class who intends
15  to object to, comment upon, or opt out of the settlement shall
16  mail written notice of that intent to Phoenix Class Action
17  Administration Solutions pursuant to the instructions in the
18  Notice of Class Action Settlement;

19      (9) a final fairness hearing shall be held before this court
20  electronically, with all parties appearing via Zoom, on Monday,
21  May 17, 2021, at 1:30 p.m., to determine whether the proposed
22  settlement is fair, reasonable, and adequate and should be
23  approved by this court; to determine whether the settlement
24  class's claims should be dismissed with prejudice and judgment
25  entered upon final approval of the settlement; to determine
26  whether final class certification is appropriate; and to consider
27  class counsel's applications for attorney's fees, costs, and an
28  incentive award to plaintiff.  The parties shall update the

proposed Notice of Class Action Settlement to inform class

members that the final fairness hearing will take place over

Zoom.  The Notice shall instruct any person who is interested in

attending the hearing to contact plaintiff's counsel no later

than sixty (60) days from the date Phoenix Class Action

Administration Solutions mails the Notice of Class Action

Settlement to obtain instructions for gaining access via Zoom.

The courtroom deputy shall provide plaintiff's counsel with these

instructions no later than May 12, 2021.  Plaintiff's counsel

shall, in turn, provide the instructions to persons who have

expressed interest in attending no later than May 14, 2021.  The

court may continue the final fairness hearing without further

notice to the members of the class;

        (10) no later than twenty-eight (28) days before the final

fairness hearing, class counsel shall file with this court a

petition for an award of attorney's fees and costs.  Any

objections or responses to the petition shall be filed no later

than fourteen (14) days before the final fairness hearing.  Class

counsel may file a reply to any objections no later than seven

(7) days before the final fairness hearing;

        (11) no later than twenty-eight (28) days before the final

fairness hearing, class counsel shall file and serve upon the

court and defendants' counsel all papers in support of the

settlement, the incentive award for the class representative, and

any award for attorney's fees and costs;

        (12) no later than twenty-eight (28) days before the final

fairness hearing, Phoenix Class Action Administration Solutions

shall prepare, and class counsel shall file and serve upon the

1   court and defendants' counsel, a declaration setting forth the

2   services rendered, proof of mailing, a list of all class members

3   who have opted out of the settlement, a list of all class members

4   who have commented upon or objected to the settlement;

5       (13) any person who has standing to object to the terms of

6   the proposed settlement may appear at the final fairness hearing

7   via zoom (themselves or through counsel) and be heard to the

8   extent allowed by the court in support of, or in opposition to,

9   (a) the fairness, reasonableness, and adequacy of the proposed

10  settlement, (b) the requested award of attorney's fees,

11  reimbursement of costs, and incentive award to the class

12  representative, and/or (c) the propriety of class certification.

13  To be heard in opposition at the final fairness hearing, a person

14  must, no later than sixty (60) days from the date Phoenix Class

15  Action Administration Solutions mails the Notice of Class Action

16  Settlement, (a) serve by hand or through the mails written notice

17  of his or her intention to appear, stating the name and case

18  number of this action and each objection and the basis therefore,

19  together with copies of any papers and briefs, upon class counsel

20  and counsel for defendants, and (b) file said appearance,

21  objections, papers, and briefs with the court, together with

22  proof of service of all such documents upon counsel for the

23  parties.

24      Responses to any such objections shall be served by

25  hand or through the mails on the objectors, or on the objector's

26  counsel if there is any, and filed with the court no later than

27  fourteen (14) calendar days before the final fairness hearing.

28  Objectors may file optional replies no later than seven (7)

1  calendar days before the final fairness hearing in the same

2  manner described above.  Any settlement class member who does not

3  make his or her objection in the manner provided herein shall be

4  deemed to have waived such objection and shall forever be

5  foreclosed from objecting to the fairness or adequacy of the

6  proposed settlement, the judgment entered, and the award of

7  attorney's fees, costs, and an incentive award to the class

8  representative unless otherwise ordered by the court;

9  (14) pending final determination of whether the settlement

10  should be ultimately approved, the court preliminarily enjoins

11  all class members (unless and until the class member has

12  submitted a timely and valid request for exclusion) from filing

13  or prosecuting any claims, suits, or administrative proceedings

14  regarding claims to be released by the settlement.

15  (15) in light of the court's preliminary approval of the

16  parties' settlement, the court hereby vacates the Final Pretrial

17  Conference and trial date currently set in this matter for March

18  29, 2021, and May 11, 2021, respectively.

19  Dated:  January 12, 2021

20  WILLIAM B. SHUBB
   UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28