1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                         ----oo0oo----

11

12   ANGELA FLORES, individually and      No. 2:19-cv-00083 WBS JDP
     on behalf of other similarly
13   situated current and former
     employees,
14                                         MEMORANDUM AND ORDER RE:
                    Plaintiff,             MOTION FOR FINAL APPROVAL OF
15                                         CLASS ACTION SETTLEMENT AND
          v.                               MOTION FOR ATTORNEYS' FEES,
16                                         COSTS, AND REPRESENTATIVE
     DART CONTAINER CORPORATION, a         SERVICE PAYMENT
17   Nevada corporation; DART
     CONTAINER CORPORATION OF
18   CALIFORNIA, a Michigan
     corporation; and DOES 1-100,
19   inclusive,

20                    Defendants.

21

22                         ----oo0oo----

23        Plaintiff Angela Flores, individually and on behalf of

24   all other similarly situated employees, brought this putative

25   class action against defendants Dart Container Corporation and

26   Dart Container Corporation of California (collectively,

27   "defendants"), alleging violations of the California Labor Code,

28   Cal. Lab. Code §§ 201-203, 226, 218, 233, 246, the California

                                    1

Business and Professions Code, Cal. Bus. Prof. Code § 17200, and the California Private Attorneys General Act of 2004 ("PAGA"), Cal. Lab. Code § 2698, et seq. (See First Am. Compl. ("FAC") (Docket No. 23).)  On January 12, 2021, the court granted plaintiff's unopposed motion for preliminary approval of class action settlement. (See Order Granting Preliminary Approval (Docket No. 38).)  Plaintiff now moves unopposed for final approval of the parties' class action settlement and attorneys' fees, costs, and a class representative service payment. (See Docket Nos. 39-40.)

I.   Discussion[1]

The Ninth Circuit has declared a strong judicial policy favoring settlement of class actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992); see also Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution[.]") (citation omitted). Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e).

"Approval under 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted."

---

[1]   The court already recited the factual and procedural background in its order granting plaintiff's unopposed motion for preliminary approval of the class action settlement. (See Order Granting Preliminary Approval at 2-5.)  Accordingly, the court will refrain from doing so again.

1 <u>Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.</u>, 221 F.R.D. 523,

2 525 (C.D. Cal. 2004) (citing <u>Manual for Complex Litig. (Third)</u>,

3 § 30.41 (1995)). This court satisfied step one by granting

4 plaintiff's unopposed motion for preliminary approval of class

5 action settlement on January 12, 2021. (Docket No. 38.) Now,

6 following notice to the class members, the court will consider

7 whether final approval is merited by evaluating: (1) the

8 treatment of this litigation as a class action and (2) the terms

9 of the settlement. <u>See</u> <u>Diaz v. Tr. Territory of Pac. Islands</u>,

10 876 F.2d 1401, 1408 (9th Cir. 1989).

11    A.    <u>Class Certification</u>

12        A class action will be certified only if it meets the

13 requirements of Rule 23(a)'s four prerequisites and fits within

14 one of Rule 23(b)'s three subdivisions. Fed. R. Civ. P. 23(a)-

15 (b). Although a district court has discretion in determining

16 whether the moving party has satisfied each Rule 23 requirement,

17 the court must conduct a rigorous inquiry before certifying a

18 class. <u>See</u> <u>Califano v. Yamasaki</u>, 442 U.S. 682, 701 (1979); <u>Gen.</u>

19 <u>Tel. Co. of Sw. v. Falcon</u>, 457 U.S. 147, 161 (1982).

20        1.    <u>Rule 23(a)</u>

21        Rule 23(a) restricts class actions to cases where:
   (1) the class is so numerous that joinder of all
22       members is impracticable; (2) there are questions
         of law or fact common to the class; (3) the claims
23       or defenses of the representative parties are
         typical of the claims or defenses of the class;
24       and (4) the representative parties will fairly and
         adequately protect the interests of the class.
25

26 Fed. R. Civ. P. 23(a). These requirements are commonly referred

27 to as numerosity, commonality, typicality, and adequacy of

28
                                3

representation.  In the court's order granting preliminary approval of the settlement, the court found that the putative class satisfied the Rule 23(a) requirements.  (See Order Granting Preliminary Approval at 5-15.)  The court is unaware of any changes that would affect its conclusion that the putative class satisfies the Rule 23(a) requirements, and the parties have not indicated that they are aware of any such developments.  (Mot. for Final Approval at 8-11.)  The court therefore finds that the class definition proposed by plaintiff meets the requirements of Rule 23(a).

## 2.   Rule 23(b)

An action that meets all the prerequisites of Rule 23(a) may be certified as a class action only if it also satisfies the requirements of one of the three subdivisions of Rule 23(b).  Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th Cir. 2013).  In its order granting preliminary approval of the settlement, the court found that both the predominance and superiority prerequisites of Rule 23(b)(3) were satisfied.  (Order Granting Preliminary Approval at 16-21.)  Given counsel's representations that no class members in the Alvarado action, Alvarado v. Dart Container Corp. of California, Riverside Superior Court No. RIC1211707, opted out of the settlement before the Riverside Superior Court granted final approval of the settlement, and that class members in this case were adequately informed of the existence of the Prado matter, Prado v. Dart Container Corporation of California, et al., Santa Clara Superior Court No. No. 18CV336217, and that remaining a member of the class could affect their ability to pursue claims as part of the

Prado class, as discussed further below, the court remains satisfied that a class action is superior to other methods of fairly and adjudicating the controversy between the parties in this case under Rule 23(b)(3).  The court is unaware of any changes that would affect its conclusion that Rule 23(b)(3) is satisfied.  Because the settlement class satisfies both Rule 23(a) and 23(b)(3), the court will grant final class certification of this action.

### 3.  Rule 23(c)(2) Notice Requirements

If the court certifies a class under Rule 23(b)(3), it "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Rule 23(c)(2) governs both the form and content of a proposed notice.  See Ravens v. Iftikar, 174 F.R.D. 651, 658 (N.D. Cal. 1997) (citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 172–77 (1974)).  Although that notice must be "reasonably certain to inform the absent members of the plaintiff class," actual notice is not required.  Silber v. Mabon, 18 F.3d 1449, 1454 (9th Cir. 1994) (citation omitted).

The parties selected Phoenix Settlement Administrators ("PSA") to serve as the Settlement Administrator.  (Decl. of Taylor Mitzner in Supp. of Final Approval ("Mitzner Decl.") ¶¶ 1-2 (Docket No. 39-4).)  Defendants timely provided PSA with the class list, including the class members' first and last names, social security numbers, last known mailing addresses, telephone numbers, hire and termination dates, and relevant sub-class

information during the class period.[2] (Id. at ¶¶ 3-4.) PSA mailed (on behalf of defendants) notice that included all applicable court documents in this matter to the state Attorney Generals of the four states in which class members reside and to the United States Attorney General, as required by the Class Action Fairness Act. (Id. at ¶ 5); see also 28 U.S.C. § 1715(a).

PSA refined class members' contact information by conducting a United States Postal Service National Change of Address Database search. (Id. at ¶ 6.) Notice packets were mailed to all 612 class members by First Class Mail on February 10, 2021. (Id. at ¶ 8.) Sixteen notices were returned to PSA as undeliverable, with no forwarding address. (Id. at ¶ 9.) PSA was able to locate mailing addresses for the 16 class members by performing a TransUnion TLOxp skip trace search. (Id.) PSA promptly re-mailed notice packets to those 16 class members using the new addresses. (Id.) None of those notices were returned as undeliverable; as of the date of this Order, PSA represents that zero notices are considered undeliverable. (Id. at ¶ 10.)

The notice packet mailed to class members contained, among other things, a description of the case; the terms of the Settlement Agreement, including the total settlement amount and how it will be allocated; information about plaintiff's

---

[2] Plaintiff originally anticipated there would be 423 Non-Exempt Wage Statement Class Members, 502 Sick Pay Class Members, and 131 Former Employee Sub-Class Members identifiable from defendants' records. (See Order Granting Preliminary Approval at 3.) Following the preliminary approval motion, defendants confirmed 422 Non-Exempt Wage Statement Class Members, 501 Sick Pay Class Members, and 131 Former Employee Sub-Class Members. (Mitzner Decl. ¶ 4.)

attorneys' fees; the procedures for requesting exclusion from the settlement or objecting to the settlement; an estimate of the individual class members' share; and notice that Flores settled her individual FEHA claims with defendants for a separate, confidential amount. (See Mitzner Decl., Ex. B.)  The notice also informed class members of the parallel class action, Prado v. Dart Container Corporation of California, et al., Santa Clara County Superior Court Case No. 18CV336217, that some of their claims may overlap with the claims alleged in Prado, and that, to the extent any claims overlap, they will be resolved with the class claims in this action if the class member remains a member of the class.  (See id.)

The deadline to request exclusion from the settlement has passed without any class member opting out, objecting, or disputing his or her calculated number of workweeks.  (Id. at ¶¶ 11-13.)

"Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"  Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) (quoting Mendoza v. Tucson Sch. Dist. No. 1, 623 F.2d 1338, 1352 (9th Cir. 1980)).  The notice identifies the parties, explains the nature of the proceedings, defines the class, provides the terms of the settlement, and explains the procedure for objecting or opting out of the class.  (Mitzner Decl., Ex. B.)  The notice also explains how class members' individual settlement awards will be calculated and the amount that class members can expect to receive.  (Id.)  Accordingly,

the notice complies with Rule 23(c)(2)(B)'s requirements.

B.    Rule 23(e): Fairness, Adequacy, and Reasonableness of Proposed Settlement

Having determined that class treatment is warranted, the court must now address whether the terms of the parties' settlement appear fair, adequate, and reasonable. See Fed. R. Civ. P. 23(e)(2). To determine the fairness, adequacy, and reasonableness of the agreement, Rule 23(e) requires the court to consider four factors: "(1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposal treats class members equitably relative to each other." Id. The Ninth Circuit has also identified eight additional factors the court may consider, many of which overlap substantially with Rule 23(e)'s four factors:

> The strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).[3]

---

[3]    Because claims under PAGA are "a type of qui tam action" in which an employee brings a claim as an agent or proxy of the state's labor law enforcement agencies, the court must also "review and approve" settlement of plaintiff's and other class members' PAGA claims along with their class claims. See Cal. Lab. Code § 2669(k)(2); Sakkab v. Luxottica Retail N. Am., Inc., 803 F.3d 425, 435-36 (9th Cir. 2015).
     Though "[the] PAGA does not establish a standard for evaluating PAGA settlements," Rodriguez, 2019 WL 331159 at *4 (citing Smith v. H.F.D. No. 55, Inc., No. 2:15-CV-01293 KJM KJN,

### 1.   Adequate Representation

The court must first consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).  This analysis is "redundant of the requirements of Rule 23(a)(4) . . . ." Hudson v. Libre Tech., Inc., No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060, at *5 (S.D. Cal. May 13, 2020) (quoting Rubenstein, 4 Newberg on Class Actions § 13:48 (5th ed.)) see also In re GSE Bonds Antitr. Litig., 414 F. Supp. 3d 686, 701 (S.D.N.Y. 2019) (noting similarity of inquiry under Rule 23(a)(4) and Rule 23(e)(2)(A)).

Because the Court has found that the proposed class satisfies Rule 23(a)(4) for purposes of class certification, the adequacy factor under Rule 23(e)(2)(A) is also met.  See Hudson, 2020 WL 2467060, at *5.

### 2.   Negotiation of the Settlement Agreement

Counsel for both sides appear to have diligently pursued settlement after thoughtfully considering the strength of their arguments and potential defenses.  The parties participated in an arms-length mediation before an experienced employment litigation mediator, Kim Deck, Esq., on August 31, 2020, ultimately agreeing to the mediator's proposal and executing a

---

2018 WL 1899912, at *2 (E.D. Cal. Apr. 20, 2018)), a number of district courts have applied the eight Hanlon factors, listed above, to evaluate PAGA settlements.  See, e.g., Smith, 2018 WL 1899912, at *2; Ramirez, 2017 WL 3670794, at *3; O'Connor v. Uber Techs., 201 F. Supp. 3d 1110, 1134 (N.D. Cal. 2016).  "Many of these factors are not unique to class action lawsuits and bear on whether a settlement is fair and has been reached through an adequate adversarial process."  See Ramirez, 2017 WL 3670794, at *3.  Thus, the court finds that these factors will also govern its review of the PAGA settlement.  See id.

Memorandum of Understanding to memorialize the agreement at the close of the full-day mediation. (Decl. of Jenny D. Baysinger in Support of Motion for Final Approval ("Baysinger Decl.") ¶¶ 33-37 (Docket No. 39-2).) Given the sophistication and experience of plaintiff's counsel and the parties' representation that the settlement reached was the product of arms-length bargaining, the court does not question that the proposed settlement is in the best interest of the class. See Fraley v. Facebook, Inc., 966 F. Supp. 2d 939, 942 (N.D. Cal. 2013) (holding that a settlement reached after informed negotiations "is entitled to a degree of deference as the private consensual decision of the parties" (citing Hanlon, 150 F.3d at 1027)).

### 3. Adequate Relief

In determining whether a settlement agreement provides adequate relief for the class, the court must "take into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any [other] agreement[s]" made in connection with the proposal. See Fed. R. Civ. P. 23(e)(2)(C); Baker v. SeaWorld Entm't, Inc., No. 14-cv-02129-MMA-AGS, 2020 WL 4260712, at *6-8 (S.D. Cal. Jul. 24, 2020).

The court notes that, in evaluating whether the settlement provides adequate relief, it must consider several of the same factors as outlined in Hanlon, including the strength of the plaintiff's case, the risk, expense, complexity, and likely duration of further

litigation, the risk of maintaining class action status throughout the trial, and the amount offered in settlement. See Hanlon, 150 F.3d at 1026.

In determining whether a settlement agreement is substantively fair to class members, the court must balance the value of expected recovery against the value of the settlement offer. See In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). Here, plaintiff's counsel estimates that the portion of the Maximum Settlement Amount ("MSA") allocated to class claims, $396,000, represents 34.6% of the class' maximum recovery. (Baysinger Decl. ¶¶ 45-61.) Given that 100% success in litigation is uncommon, and based on defendants' contentions that (1) a California court decision could come down holding that redeemed sick pay cannot underscore a waiting time penalty claim under California law; (2) that defendants' failure to properly calculate and pay redeemed sick leave was not willful; (3) that Flores lacks standing; (4) that the wage statements actually identify a number that corresponds to total hours worked (though not labeled as such); (5) that Flores and the other Non-Exempt Wage Statement Class Members were not injured by any technical omission on the wage statements; and (6) that any omissions/errors were not "knowing and intentional," class counsel developed a more realistic estimate of what the class could have expected to receive had it proceeded to trial. (Id. at ¶ 62.) Under this more measured approach, counsel estimates that the MSA provides 68.72% of the

1  class' potential recovery.  (Id. at ¶¶ 63-64.)

2          Each Former Employee Sub-Class Member will

3  receive $835.50, in addition to any proportional shares

4  based on the number of pay periods that he/she is entitled

5  to as a member of the Sick Pay Class and/or the Non-Exempt

6  Wage Statement Class.  (Baysinger Decl., Ex. A ("Settlement

7  Agreement") ¶ 32; Mitzner Decl. ¶ 18.)  Each Sick Pay Class

8  Member and Non-Exempt Wage Statement Class Members'

9  compensation has been calculated based on the ratio of the

10  number of pay periods each individual worked during the

11  class period divided by the total number of pay periods

12  worked by all participating class members in each

13  respective sub-class.  (See id.)  The average distribution

14  to each Sick Pay Class Member is $49.90, and the average

15  distribution to each Non-Exempt Wage Statement Class Member

16  is $259.00.  (Mitzner Decl. ¶¶ 16-19; Baysinger Decl.

17  ¶ 69.)  The overall average gross settlement payment will

18  be $398.53, and the highest individual gross payment will

19  be $1,268.00.  (Id.)

20          Because the amount class members receive is based on

21  the number of workweeks each class member worked for defendants

22  during the period covered by the Settlement Agreement and

23  accounts for the relative strength of each class member's claim,

24  the court finds that it is an effective method of distributing

25  relief to the class.  See Fed. R. Civ. P. 23(e)(2)(C); Baker,

26  2020 WL 4260712, at *6-8.

27          The Settlement Agreement also sets aside $15,000

28  of the common fund for civil penalties under PAGA, $3,750

of which will be distributed to class members as part of the NSA.  (See Settlement Agreement ¶ 19.)  While plaintiff's counsel remained confident and committed to the merits of plaintiffs' case throughout litigation, counsel indicates that defendants had legitimate defenses to these claims that risked reducing the amount plaintiff and the class could recover at trial, listed above.  (See Baysinger Decl. ¶ 62.)  Because the amount of penalties plaintiff would be entitled to under the PAGA depends on how many violations of the California Labor Code defendants committed, these defenses would apply to plaintiff's PAGA claim to the same extent they apply to plaintiff's other claims.

Plaintiff's counsel represents that, absent settlement, further litigation--likely including class certification and summary judgment--would be costly, time consuming, and uncertain in outcome.  (See id. at ¶ 71.) Defendants would likely appeal any favorable judgment for plaintiff, resulting in further expense and jeopardy for class members.  (Id.)  Given the strength of plaintiff's claims and defendants' potential exposure, as well as the risk, expense, and complexity involved in further litigation, the court is satisfied that the settlement and resulting distribution provides a strong result for the class and is fair to class members, and thereby "falls within the range of possible approval."  See Tableware, 484 F. Supp. 2d at 1079.

The Settlement Agreement further provides for an award

13

of attorney's fees totaling 33% of the $396,000 MSA.  (See Baysinger Decl. ¶ 92.)  If a negotiated class action settlement includes an award of attorney's fees, then the court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).

Plaintiff's counsel has filed a separate motion for attorneys' fees and costs pursuant to Federal Rule 23(h).  (Mot. for Attorneys' Fees (Docket No. 40-1).)  Though the court will address the reasonableness of counsel's fees in additional detail below, in Section C, the court is satisfied that counsel's fees are reasonable and support approval of the settlement.

In light of all of these considerations, the court finds that Rule 23(e)'s third factor is satisfied.  See Fed. R. Civ. P. 23(e)(C).

4.   Equitable Treatment of Class Members

Finally, the court must consider whether the Settlement Agreement "treats class members equitably relative to each other."  See Fed. R. Civ. P. 23(e)(2)(D).  In doing so, the Court determines whether the settlement "improperly grant[s] preferential treatment to class representatives or segments of the class."  Hudson, 2020 WL 2467060, at *9 (quoting Tableware, 484 F. Supp. at 1079.

Here, the Settlement Agreement does not improperly discriminate between any segments of the class.  All Non-Exempt Wage Statement Class Members and Sick Pay Class Members are entitled to monetary relief in proportion to the number of

14

compensable workweeks they spent working for defendants, and all
Former Employee Sub-Class are equally entitled to monetary relief
based on the fact that they are entitled to waiting time
penalties.  (See Settlement Agreement ¶ 32; Baysinger Decl. ¶¶
48-55.)  No class members have objected to the parties' workweek
calculations.  (Mitzner Decl. ¶¶ 10-13.)

While the Settlement Agreement allows plaintiff to seek
an incentive award of $2,500 (Settlement Agreement ¶ 16),
plaintiff has submitted additional evidence documenting her time
and effort spent on this case, which, as discussed further below,
in Section E, has satisfied the court that her additional
compensation above other class members is justified.  See Hudson,
2020 WL 2467060, at *9.  The court therefore finds that the
Settlement Agreement treats class members equitably.  See Fed. R.
Civ. P. 23(e)(D).

5.    Remaining Hanlon Factors

In addition to the Hanlon factors already considered as
part of the court's analysis under Rule 23(e)(A)-(D), the court
must also take into account "the extent of the discovery
completed . . . the presence of government participation, and the
reaction of class members to the proposed settlement."  Hanlon,
150 F.3d at 1026

Through formal and informal discovery, defendants
provided a substantial amount of information that appears to have
allowed the parties to adequately assess the value of plaintiff's
and the class' claims.  (See Baysinger Decl. ¶¶ 27-29.)
Defendants provided plaintiff with data that showed the
approximate size of each sub-class, the number of wage statements

issued, the number of pay periods in the PAGA period, hundreds of
pages of documents related to defendants' policies, practices,
and procedures, as well as more than 150,000 line items of
payroll data relating to 685 individuals between September 25,
2015 and August 7, 2020.  (Id.)  This factor weighs in favor of
final approval of the settlement.

The seventh Hanlon factor, pertaining to government
participation, also weighs in favor of approval.  Hanlon, 150
F.3d at 1026.  Under PAGA, "[t]he proposed settlement [must be]
submitted to the [LWDA] at the same time that it is submitted to
the court."  Cal. Lab. Code § 2669(k)(2).  Here, plaintiff's
counsel provided a copy of the proposed settlement agreement to
the LWDA on November 16, 2020.  (Baysinger Decl. ¶ 110.)  As of
the date of this Order, the LWDA has not sought to intervene or
otherwise objected to the PAGA settlement.  (See id. at ¶ 111.)
This factor therefore weights in favor of final approval of the
settlement.

The eighth Hanlon factor, the reaction of the class
members to the proposed settlement, also weighs in favor of final
approval.  See Hanlon, 150 F.3d at 1026.  No class members have
objected to or sought to opt out of the settlement.  See id.

The court therefore finds that the remaining Hanlon
factors weigh in favor of preliminary approval of the Settlement
Agreement.  See Ramirez, 2017 WL 3670794, at *3.

In sum, the four factors that the court must evaluate
under Rule 23(e) and the eight Hanlon factors, taken as a whole,
appear to weigh in favor of the settlement.  The court will
therefore grant final approval of the Settlement Agreement.

C.  Attorneys' Fees

        Federal Rule of Civil Procedure 23(h) provides, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  If a negotiated class action settlement includes an award of attorneys' fees, that fee award must be evaluated in the overall context of the settlement.  Knisley v. Network Assocs., 312 F.3d 1123, 1126 (9th Cir. 2002); Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 455 (E.D. Cal. 2013) (England, J.).  The court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  Bluetooth Headset, 654 F.3d at 941.

        "Under the 'common fund' doctrine, 'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable [attorneys'] fee from the fund as a whole.'"  Staton v. Boeing Co., 327 F.3d 938, 969 (9th Cir. 2003) (quoting Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980)).  In common fund cases, the district court has discretion to determine the amount of attorneys' fees to be drawn from the fund by employing either the percentage method or the lodestar method.  Id.  The court may also use one method as a "cross-check[ ]" upon the other method. See Bluetooth Headset, 654 F.3d at 944.

        As part of the settlement, the parties agreed to an award of attorneys' fees of $137,000, which constitutes 33% of the MSA.  (Settlement Agreement ¶ 16(v).)  Once attorneys' fees

17

and costs, the plaintiff's service award, the PAGA allocation, and the estimated costs of settlement have been distributed, an estimated Net Settlement Amount of approximately $243,900 will be distributed to the members of the settlement classes.  This works out to an average net share of $835.50 for each Former Employee Sub-Class Member, $49.90 for each Sick Pay Class Member, and $259.00 for each Non-Exempt Wage Statement Class Member. (Settlement Agreement ¶ 32; Mitzner Decl. ¶¶ 16-19; Baysinger Decl. ¶ 69.)  Counsel represents that this award represents a "substantial" result for the class that will bring meaningful relief.  (Mot. for Attorneys' Fees and Costs at 9 (Docket No. 40-1); Baysinger Decl. ¶ 46.)  A review of wage and hour class action settlements in this district confirms that this appears to be a favorable recovery for class members that will be available without further delay.  See, e.g., Cooley v. Indian River Transp. Co., No. 1:18-cv-00491 WBS, 2019 WL 2077029 (E.D. Cal. May 10, 2019) (finding that $450.14 recovery per truck driver class member was a "favorable" result); Ontiveros v. Zamora, No. 2:08-cv-00567 WBS DAD, 2014 WL 3057506 (E.D. Cal. July 7, 2014) (observing that an average recovery of $6,000 was "a generous amount" and citing cases approving lower per-class-member averages $601.91 and $1,000.00).

Like other complex wage and hour class actions, this case presented both counsel and the class with a risk of no recovery at all.  (Baysinger Decl. ¶ 93.)  Plaintiff's counsel represents that, because her firm works on contingency, it sometimes recovers very little to nothing at all, even for cases that may be meritorious, and that the potential costs that must

18

be expended in such cases are often substantial.  (See id.)
Where counsel do succeed in vindicating statutory and employment
rights on behalf of a class of employees, they depend on
recovering a reasonable percentage-of-the-fund fee award to
enable them to take on similar risks in future cases.  (See id.)
Plaintiff's counsel argues that, in light of the strong result
and substantial risk taken in this case, a 33% fee, as requested
here, is reasonable.

The Ninth Circuit has established 25% of the fund as
the "benchmark" award that should be given in common fund cases.
Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301,
1311 (9th Cir. 1990).  As this court recently noted, "a review of
California cases . . . reveals that courts usually award
attorneys' fees in the 30-40% range in wage and hour class
actions that result in recovery of a common fun[d] under $10
million."  Watson v. Tennant Co., No. 2:18-cv-02462 WBS DB, 2020
WL 5502318, at *7 (E.D. Cal. Sep. 11, 2020) (awarding 33.33% of
settlement fund); see also Osegueda v. N. Cal. Inalliance, No.
18-cv-00835 WBS EFB, 2020 WL 4194055, at *16 (E.D. Cal. July 21,
2020) (same); Cooley, 2019 WL 2077029, at *20 (fee award of 33%
of the common fund in class action alleging missed meal and rest
breaks for class of truck drivers).  Given that the requested fee
is in line with amounts the Ninth Circuit has indicated are
reasonable in common fund cases totaling less than $10 million,
the court agrees that plaintiff's counsel's requested percentage
of the common fund is reasonable, especially when viewed in light
of the recovery obtained on behalf of class members and the risks
undertaken by plaintiff's counsel in this case.

A "lodestar-multiplier" cross-check confirms the reasonableness of the requested award. Plaintiff's counsel has calculated a lodestar figure in this case of $165,107.45.[4] (See Baysinger Decl. ¶ 99.) According to contemporaneous billing logs kept by plaintiff's counsel, attorneys at her firm have, over the span of almost two and a half years, dedicated 220.65 hours of work to this case.[5] (Id. at ¶¶ 97-99.) The firm is highly specialized in wage and hour matters and class action cases, and the firm's hourly rates have been approved by a number of federal and state courts in California. (Id. at ¶¶ 98; 104-108.)

Based on plaintiff's counsel's calculated lodestar figure, plaintiff seeks a lodestar multiplier of approximately 0.83--in other words, plaintiff's counsel seeks less than the lodestar cross-check would indicate she and her firm are entitled to. In class actions, "[m]ultipliers can range from 2 to 4 or even higher." Wershba v. Apple Computer, Inc., 91 Cal. App. 4th 224, 255 (2001).[6] "Indeed, 'courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases.'" Vizcaino, 290 F.3d at 1051 (approving fee award where lodestar cross-check resulted in multiplier of 3.65); see also id. at 1052 n.6, appx. (collecting cases and finding that risk

---

[4]     The court expresses no opinion as to the proper lodestar amount in this case.

[5]     The firm's hourly rate for partners is $759 per hour. (Baysinger Decl. ¶ 99.) The hourly rate for associates is $368 per hour. (Id.)

[6]     Federal courts incorporate California state law on deciding an appropriate multiplier when the claims are brought under California state law. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002).

multiplier fell between 1.0 and 4.0 in 83% of cases); In re NASDAQ Market-Makers Antitrust Litig., 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (awarding 3.97 multiplier and observing that "[i]n recent years multipliers of between 3 and 4.5 have become more common").

Factors considered in determining the appropriate lodestar multiplier generally include: (1) the risks presented by the contingent nature of the case; (2) the difficulty of the questions involved and the skill requisite to perform the legal service properly; (3) the nature of the opposition; (4) the preclusion of other employment by the attorney from accepting the case; and (5) the result obtained. Ketchum v. Moses, 24 Cal. 4th 1122, 1132 (Cal. 2001); Graham v. DaimlerChrysler Corp., 34 Cal. 4th 553, 582 (Cal. 2004); Serrano v. Priest, 20 Cal.3d 25, 48-49 (Cal. 1977). Given the risks undertaken by plaintiff's counsel, the defenses likely to be raised by defendant, the strong result for the class, and the fact that courts routinely approve fee awards corresponding with a lodestar of well over 1.0, the court finds that a multiplier of 0.83 is justified this case. See Johnson v. Fujitsu Tech. & Bus. of Am., Inc., No. 16-cv-03698-NC, 2018 U.S. Dist. LEXIS 80219, at *20 (N.D. Cal. May 11, 2018) (finding multiplier of 4.37 to be reasonable); In re NCAA Ath. Grant-In-Aid Cap Antitrust Litig., 2017 U.S. Dist. LEXIS 201108, at *21 (N.D. Cal. Dec. 6, 2017) (finding multiplier of 3.66 to be "well within the range of awards in other cases.").

Accordingly, the court finds the requested fees to be reasonable and will approve counsel's motion for attorneys' fees.

D.   Costs

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." In re Heritage Bond Litig., Civ. No. 02-1475, 2005 WL 1594403, at *23 (C.D. Cal. June 10, 2005). The appropriate analysis is whether the particular costs are of the type billed by attorneys to paying clients in the marketplace. Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994). "Thus, [reimbursement of] reasonable expenses, though greater than taxable costs, may be proper." Id. at 20.

Here, the parties agreed that plaintiff's counsel shall be entitled to recover reasonable litigation costs, not to exceed $7,500. (Settlement Agreement ¶ 16(iv).) Counsel states that her firm has incurred expenses and costs to date in the amount of $7,618.17. (Baysinger Decl. ¶ 103.) These expenses include filing fees, copy/mailing costs, mediation fees, and expert fees. (Id.) The court finds that these are reasonable litigation expenses, see Heritage, 2005 WL 1594403, at *23, and will therefore grant class counsel's request for costs up to the amount authorized by the Settlement Agreement, $7,500.

E.   Representative Service Award

"Incentive awards are fairly typical in class action cases." Rodriguez, 563 F.3d at 958. "[They] are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Id. at 958-59.

Nevertheless, the Ninth Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives . . . ." Radcliffe v. Experian Info. Solutions, Inc., 715 F.3d 1157, 1164 (9th Cir. 2013).  In assessing the reasonableness of incentive payments, the court should consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions" and "the amount of time and effort the plaintiff expended in pursuing the litigation." Staton, 327 F.3d at 977 (citation omitted).  The court must balance "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." Id.

In the Ninth Circuit, an incentive award of $5,000 is presumptively reasonable. Davis v. Brown Shoe Co., Inc., No. 1:13-01211 LJO BAM, 2015 WL 6697929, at *11 (E.D. Cal. Nov. 3, 2015) (citing Harris v. Vector Marketing Corp., No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (collecting cases).  The single named plaintiff, Angela Flores, seeks an incentive payment of $2,500.  (Baysinger Decl. ¶ 90.)  Flores represents that she has devoted significant time and resources to the case over a period of three years.  (Decl. of Angela Flores ("Flores Decl.") ¶¶ 13-17 (Docket No. 39-3).)  As set forth in her declaration, Flores provided information and assisted counsel in preparing the complaint and responding to discovery.  (Id. at ¶¶ 12-13.)  She participated in a number of phone calls to discuss the class' claims and litigation strategy, and

participated in the August 31, 2020 mediation via Zoom.  (Id.)
These efforts by Flores support awarding her with an incentive
payment.  See Staton, 327 F.3d at 977.

Flores also states that she has participated in this
litigation as class representative despite the attendant risks to
her finances and reputation.  Both Flores and her counsel
represent that a Google search of "Flores" and "Dart" results in
this lawsuit being listed on the first page.  (Flores Decl. ¶ 15;
Baysinger Decl. ¶ 90.)  Future potential employers need only
search for Flores and her former employer's name to learn that
she has pursued wage and hour claims against her former employer.
(See id.)  Flores further declares that she was aware that, had
this case not settled and had she not prevailed in this suit, she
could have been responsible for defendants' litigation costs,
which likely would have exceeded $25,000.  (See Flores Decl.
¶ 16.)  The court finds that these risks were real and
substantial, and further warrant awarding an incentive payment to
Flores for her participation as class representative.  See
Staton, 327 F.3d at 977.

This conclusion is not altered by the fact that Flores
has also separately settled her own claims against defendants for
sexual harassment, retaliation, and failure to prevent harassment
and discrimination under the California Fair Employment and
Housing Act ("FEHA").  Though the existence of separate FEHA
claims against defendants means that Flores would have been
required to put her name on a lawsuit against her former employer
regardless of whether she acted as class representative, a class
action alleging systemic wage and hour violations necessarily

involves a widespread notice campaign that is designed to bring
additional attention to the claims at issue.  Accordingly, the
decision to act as a named plaintiff in a class action carries
risks to one's reputation and future employment prospects that
are distinct from those associated with an individual FEHA case.
The court therefore finds that awarding Flores with a service
payment in this case would still act to incentivize class members
to act as named plaintiffs in future class actions, even if those
class members have separate, individual claims against their
employer.  See Staton, 327 F.3d at 977.

The court will therefore authorize payment of a $2,500
service award.

II.  Conclusion

Based on the foregoing, the court will grant final
certification of the settlement class and will approve the
settlement set forth in the settlement agreement as fair,
reasonable, and adequate.  The settlement agreement shall be
binding upon all participating class members who did not exclude
themselves.

IT IS THEREFORE ORDERED that plaintiff's unopposed
motions for final approval of the parties' class action
settlement and attorneys' fees, costs, and a class representative
service payment (Docket Nos. 39-40) be, and the same hereby are,
GRANTED.

IT IS FURTHER ORDERED THAT:

(1) Solely for the purpose of this settlement, and
pursuant to Federal Rule of Civil Procedure 23, the court hereby
certifies the following class:

(a) all current and non-exempt California employees of defendants who were eligible for and used paid sick leave during a workweek when he/she also earned shift differentials, non-discretionary bonuses, commissions, or other remuneration between January 11, 2015 and November 30, 2020 (the "Sick Pay Class");

(b) all Sick Pay Class Members who separated from employment at any time between January 11, 2016 and November 30, 2020, and who did not participate in the class action settlement in <u>Alvarado v. Dart Container Corp.</u>, Riverside County Superior Court Case No. RIC1211707 ("Former Employee Sub-Class"); and

(c) all current and former hourly, nonexempt California employees of defendants who received a wage statement between January 11, 2018 and November 30, 2020, and did not participate in the class action settlement in <u>Alvarado v. Dart Container Corp.</u>, Riverside County Superior Court Case No. RIC1211707 ("Non-Exempt Wage Statement Class");

(2) The court appoints the named plaintiff Angela Flores as class representative and finds that she meets the requirements of Rule 23;

(3) The court appoints law firm of Mayall Hurley P.C., by and through Jenny D. Basinger and Robert J. Wasserman, as class counsel and finds that it meets the requirements of Rule 23;

(4) The Settlement Agreement's plan for class notice is the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. The plan is approved and adopted. The notice to the class complies with Rule

23(c)(2) and Rule 23(e) and is approved and adopted;

(5) The court finds that the parties and their counsel took appropriate efforts to locate and inform all class members of the settlement. Given that no class member filed an objection to the settlement, the court finds that no additional notice to the class is necessary;

(6) As of the date of the entry of this order, plaintiff and all class members who have not timely opted out of this settlement herby do and shall be deemed to have fully, finally, and forever released, settled, compromised, relinquished, and discharged defendants of and from any and all settled claims, pursuant to the release provisions stated in the parties' settlement agreement;

(7) Plaintiff's counsel is entitled to fees in the amount of $137,000, and litigation costs in the amount of $7,500;

(8) Phoenix Settlement Administrators is entitled to administration costs in the amount of $8,850;

(9) Plaintiff Angela Flores is entitled to an inventive award in the amount of $2,500;

(10) $11,250 from the gross settlement amount shall be paid to the California Labor and Workforce Development Agency in satisfaction of defendants' alleged penalties under the Labor Code Private Attorneys General Act;

(11) The remaining settlement funds shall be paid to participating class members in accordance with the terms of the Settlement Agreement; and

(12) This action is dismissed with prejudice. However, without affecting the finality of this Order, the court shall

retain continuing jurisdiction over the interpretation, implementation, and enforcement of the Settlement Agreement with respect to all parties to this action and their counsel of record.

The clerk is instructed to enter judgment accordingly.

Dated:  May 17, 2021

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE